### THE H. C. GRADY.

### MANNIE et al. v. THE H. C. GRADY.

(District Court, D. Oregon. February 11, 1898.)

No. 4,223.

MARITIME LIENS—WAGES.
Persons negotiating for the purchase of a steamer, then at her home port, at Portland, Or., selected a master for her, who employed a pilot, engineer, and firemen to go with him to Portland, and bring her to San Francisco. They all understood that the purchase had not been entirely consummated, but proceeded to Portland, and there rendered some services in preparing the vessel for the trip. The sale, however, fell through, and the vessel was libeled by a mortgagee. *Held*, that they had no lien on her for their wages.

This was a libel in rem by Emmett M. Mannie and others against the steamboat H. C. Grady to enforce an alleged lien for wages.

J. W. Whalley, for libelants.
Fred R. Strong, for respondent.

BELLINGER, District Judge. The steamer Grady is a river steamer, and was, during the latter part of May, 1897, and until some time in the fore part of June following, on the ways at Portland, in this state. She was a domestic vessel. Some time during the month of May, and prior to the 23d of that month, the libelant Mannie was engaged by Capt. Denny, at San Francisco, as engineer, to come to Portland, and assist in bringing the steamer to San Francisco, Cal., and thereafter to serve on her in that state, where it was proposed to employ her. The libelant Mannie understood at the time that the purchase of the Grady had not been "thoroughly" consummated, and it was not known certainly what steamer was to be brought to San Francisco. Mannie had authority from Capt. Denny to hire two firemen and an assistant engineer, and in pursuance of this authority engaged libelants Tennent and Keeley as firemen, at $50 per month each. The libelant Richardson was employed at Oakland, Cal., by Capt. Denny in person, as pilot, at $100 per month. When Capt. Denny engaged the services of the libelants Mannie and Richardson, he was not the master of the Grady. The employment was in pursuance of the intended or conditional purchase of the steamer, then at Portland, to run between San Francisco and the Sacramento river, in California, and the libelants came to Portland for service on the trip from Oregon to California, and thereafter on the route selected for her in California, and upon arriving here they went on board of the steamer, where they remained for a time, doing some work in the way

of fitting the steamer for the ocean trip to California. But there was a hitch in the negotiations, and the transfer of the boat was not effected. In the meantime Honeyman, De Hart & Co., having a mortgage upon the vessel, took possession of her, as they had a right to do; whereupon libelants asked permission to remain, as an accommodation to them, and were permitted by the mortgagees to do so. The steamer was out of the water, on the ways at Portland, during the time of the alleged employment and service.

The question arises, have the libelants a lien for services, upon these facts? The employment of libelants was not for repairs, nor for a freighting voyage. It was to navigate either the Grady or such other vessel as might be purchased, from Portland to San Francisco, to engage in a freighting business in California. The contract also included service on the vessel after she was placed on the new route for which she was intended. Capt. Denny was not an owner or the master of the Grady when the libelants' services were engaged, and the libelants knew this. Mannie testifies that he looked to Capt. Denny for his wages, "as is customary generally in these matters," and that he understood that the purchase of the Grady had not been consummated "thoroughly." Tennent testifies that Mannie employed him to "go up with him and come down on the Grady." Keeley testifies that he did not know what steamer he was to work on, and that he would not have come to Portland if he had known that Capt. Denny was to have charge of the steamer upon which he expected to work. Richardson testifies that Capt. Denny told him he was going to Portland to bring a steamer down, and would give him, Richardson, employment as a pilot. The work done on the Grady by libelants had special reference, as I conclude, to her voyage to San Francisco preparatory to her employment there. She was being overhauled for the ocean trip to San Francisco, and possibly with reference to her future employment in California. Both the owners and mortgagees of the vessel resided here, and it does not appear that the overhauling that was done by libelants was necessary to the use of the vessel by them. As already appears, what was done had reference to the enterprise in which those who were negotiating for the vessel proposed to employ her, and in this enterprise the owners had no interest. It is not necessary to consider whether such a contract is a maritime contract. The evidence shows that libelants were not hired on the credit of the steamer. They knew that their services were preliminary to a transfer of the vessel to a distant route, and they knew, or were advised by the circumstances of their employment, that this transfer depended upon negotiations with the owners of the vessel that were not yet completed, and that this was the home of the owners; and, moreover, during a portion of the time for which they claim wages they were upon the vessel as a favor to them, at their request, by permission of the mortgagees. The principles of maritime lien do not apply in such a case, and the libel must therefore be dismissed.